IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROLLAND SEAN TOWLES, #279634,   )
                                )
    Plaintiff,                  )
                                )
v.                              )   CIVIL ACTION NO. 2:15-CV-146-MHT
                                )
DR. BOB MENDLE, *et al.*,       )
                                )
    Defendants.                 )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This cause of action is pending before the court on a 42 U.S.C. § 1983 complaint filed by Rolland Sean Towles ("Towles"), an indigent state inmate presently incarcerated at the Bullock Correctional Facility ("Bullock"). In the complaint, Towles alleges that the defendants have denied him adequate medical/dental treatment for a myriad of conditions including, but not limited to, right knee pain, removal of a diseased wisdom tooth, follow-up care for the tooth extraction, brain damage, a MRSA infection, a partially separated right shoulder, right wrist pain, gastrointestinal issues, an enlarged prostate, a scarred left lung, a bullet in his liver, sinus issues and hip pain. Towles also alleges that Dr. Siddiq has denied him medical treatment in retaliation for filing this case.

On June 19, 2015, Towles filed a motion for preliminary injunction in which he seeks injunctive relief requiring that the defendants refer him to "a qualified oral surgeon" to "remove more bone" and correct sensitivity issues arising from the extraction of a tooth on

February 9, 2015. *Doc. No. 63* at 1.

On June 22, 2015, the court entered an order directing the defendants to show cause why Towles' motion for preliminary injunction should not be granted. *Doc. No. 69*. The defendants filed a response to this order in which they reference relevant evidentiary materials previously filed with their special reports and argue that Towles is not entitled to issuance of a preliminary injunction as he has received appropriate treatment for his dental issues.

Upon review of the motion for preliminary injunction, the response and special reports filed by the defendants, the court concludes that the plaintiff's motion for preliminary injunction is due to be denied.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Towles demonstrates each of the following prerequisites:  (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352

(11th Cir. 1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'" *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir.1990).).

### III. DISCUSSION

In their response to the motion for preliminary injunction, the defendants deny that they have acted with deliberate indifference to Towles' dental needs. *Exh. 2 to the Defendants' Special Report - Doc. No. 20-2*; *Exh. 1 to the Defendants' Supplemental Special*

3

*Report - Doc. No. 58-1*. Specifically, the defendants maintain that the dental staff provided treatment to Towles for his diseased tooth in accordance with their professional judgment and assert that referral to a free-world oral surgeon for treatment is neither necessary nor warranted. In addressing Towles' claims regarding the treatment provided for his tooth, Dr. Louis R. Mendel, the treating dentist, provides the following information:

> Mr. Towles submitted a sick call request form dated January 26, 2015, requesting that he see the dental staff, claiming that he had waited more than a month to see the dentist, though I cannot identify [in the records] any prior request for dental treatment which has not been addressed. Mr. Towles submitted a sick all request form dated January 9, 2015 complaining about "an infection" in his jaw. The Bullock medical staff saw Mr. Towles in sick call the following day, January 10, 2015. Upon examination, the sick call nurse noted that Mr. Towles had only recently developed this discomfort and exhibited "minimal swelling to lower jaw." The sick call nurse provided Mr. Towles with a prescription for Motrin and referred him to me for an appointment, which was scheduled for the next available appointment date.
> Mr. Towles appeared for an appointment with me in early February of 2015, at which time I determined that Mr. Towles required the extraction of [a] . . . non-restorable tooth [- tooth number 17 -] located in a particularly bad area in his mouth. I, and the dental staff, knew the procedure would likely cause a fair amount of discomfort to Mr. Towles. After extracting the tooth, I was required to apply four sutures to the wound in order to ensure proper healing and his recovery. Three days after the procedure, on February 12, 2015, I saw Mr. Towles again, and examined the location of the procedure, which showed signs of improvement. At that time, I elected to change the dressings in his mouth. The next day (i.e. February 13, 2015), Mr. Towles submitted a sick call request form complaining that the dentist had refused to see him despite being in discomfort from the prior surgical extraction [even though he had been examined and received treatment from the dentist the previous day]. He was evaluated during sick call on February 15, 2015. At the time of the evaluation, he was referred to me for further follow up care.
> I next saw Mr. Towles . . . on February 15, 2015, at which time he was complaining of pain, and therefore, I applied new dressings to, what appeared to be, a dry socket and increased his pain medication. Oddly, however, Mr.

4

> Towles specifically requested the narcotic-like pain medication of Ultram.
>
> The term dry sockets actually refers to the specific condition arising after a surgical procedure when a blood clot fails to form in a location where a tooth is removed, and the alveolar bone is exposed. Dry sockets are a common risk associated with routine dental extractions and [are] an even greater risk when involving impacted molars. In my experience, approximately one-fourth to one-third of patients experience dry sockets after the removal of an impacted molar.
>
> The condition known as "dry sockets" is typically treated with an anti-inflammatory medication coupled with an antibiotic. As I instructed Mr. Towles during the course of his dental examinations and follow up care, it was important for him to avoid eating hard foods, smoking, or otherwise doing anything to cause a hard impact on the area where the surgical extraction occurred.
>
> Mr. Towles submitted a sick call request form dated around March 1, 2015, complaining of pain and discomfort in his jaw. The medical staff evaluated Mr. Towles during sick call on March 1, 2015 related to complaints of pain in his gums. When I saw Mr. Towles on March 3, 2015, he reported his complete recovery from the dental procedure. At that time, the signs and symptoms of dry sockets were no longer present. On March 8, 2015, Mr. Towles requested to see the dentist related to his recovery from [the] surgical extraction. On March 9, 2015 I saw Mr. Towles again, at which time he reported feeling somewhat better and my examination revealed that the location of the surgical incision looked as though it was healing appropriately.
>
> Though Mr. Towles apparently raised a complaint with the medical staff on May 13, 2015, related to his prior dental extraction, he was requesting that the medical staff provide him with orders for additional food during the day, particularly - an additional sandwich. However, Mr. Towles never voiced or submitted this request to me. The request for the sandwich is included in a sick call request form dated March 16, 2015.
>
> I did not at any time ignore any request by Mr. Towles for dental treatment. I did not deliberately ignore any dental complaints made by Mr. Towles or interfere in any way with the provision of dental care to him at any time. . . .

*Exh. 2 to the Defendants' Special Report - Doc. No. 20-2* at 2-4 (citations to dental/medical records omitted). In a subsequent affidavit, Dr. Mendel further avers that:

>       As stated in my original affidavit, Mr. Towles reported complaints of discomfort in his lower jaw in January of 2015, at which time he was evaluated and scheduled for an extraction of the diseased molar. Upon evaluation of the diseased molar, I determined that it was a "simple" extraction in my professional opinion that did not warrant referral to an off-site oral surgeon. There are extractions which warrant an outside referral; however, the number of those extractions is small. I confirmed that the extraction would be simple through my assessment of the tooth, the taking of x-rays and evaluating the shape of the tooth and surrounding bone mass. If, for example, the diseased tooth is particularly brittle or in a location where there may be additional work required on the underlying bone, then it may warrant referral to an off-site specialist. In this instance, Mr. Towles' diseased tooth did not exhibit any indicia of complications or otherwise suggest to the me that its extraction would be anything other than a typical extraction.
>       Based upon my evaluation of Mr. Towles, I did not believe at the time, nor do I believe today, that the extraction of the molar constituted anything more than a simple extraction. During the course of my career, I have performed many simple extractions and cannot recall any specific instance when I referred a patient to an oral surgeon for a simple extraction. . . . Mr. Towles apparently concludes that, because he experienced some degree of post-extraction discomfort and dry sockets, the Bullock dental staff should have referred him to an off-site oral surgeon. This analysis is simply wrong. In my opinion, Mr. Towles would have likely suffered from the same post-surgical condition regardless of whether the extraction was performed on-site at Bullock or at a free-world dental clinic.
>       I briefly saw Mr. Towles in response to a sick call request form that he submitted [on] April 15, 2015, complaining of continuing discomfort. As with my prior examinations, I did not see any signs or symptoms of infections and complications. Each time I saw Mr. Towles after the initial extraction, he expressed his continued improvement.
>       In summary, I provided Mr. Towles with all of the necessary and appropriate treatment warranted based upon his condition and my examinations. I did not deny him any necessary dental care. On each occasion Mr. Towles voiced a complaint related to his dental condition, he was evaluated by a member of the dental staff. . . .

*Exh. 1 to the Defendants' Supplemental Special Report - Doc. No. 58-1* at 2-3 (citations to

medical/dental records omitted). The medical and dental records compiled

6

contemporaneously with treatment provided to Towles support the affidavits submitted by Dr. Mendel.

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Towles has failed to demonstrate a substantial likelihood of success on the merits of his claim. Towles likewise fails to establish a substantial threat that he will suffer the requisite irreparable injury absent issuance of the requested preliminary injunction. The third factor, balancing potential harm to the parties, weighs more heavily in favor of the defendants as issuance of the injunction would have an unduly adverse affect on the ability of prison dental personnel to exercise their professional judgment in determining the appropriate course of treatment for inmates. Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. Thus, Towles has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of preliminary injunctive relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff be DENIED.

2. This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 23, 2015**. Any objections filed must specifically identify

the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 9th day of July, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE